PERRY HODGDEN *et al.* v. ARTHUR LARKIN.

FINDINGS AND VERDICT, *When Not Set Aside.* Where the trial court has sanctioned and approved the special findings and verdict of the jury, and rendered judgment thereon, the supreme court will not set the same aside if there is evidence to support such special findings and verdict.

*Error from Ellsworth District Court.*

ACTION on a promissory note. Judgment for plaintiff, *Larkin*, at the February term, 1888. The defendants, *Perry Hodgden* and wife, bring the case here. The material facts appear in the opinion.

*Ira E. Lloyd,* for plaintiffs in error.

*W. H. McMillan,* and *J. D. Lafferty,* for defendant in error.

Opinion by GREEN, C.: Arthur Larkin sued the plaintiffs in error upon a promissory note of $100, due October 1, 1885, and an account for $9.85. The defendants alleged that they constituted the firm of Perry Hodgden & Co., and that the plaintiff was indebted to them in the sum of $198.85, upon an account for merchandise purchased of them. The plaintiff insisted that most of the items of this account had been settled by crediting the same to the account of C. F. Clark, who, it was claimed, was a member of the firm of Perry Hodgden & Co.; and that these credits had been ratified by the defendants. The plaintiff obtained a judgment in the justice's court, and the case was appealed to the district court of Ellsworth county, where it was again tried, and the jury returned a verdict in favor of the plaintiff for the sum of $26.44.

It is claimed that this verdict is contrary to the evidence and the instructions of the court; that the special findings settled every fact in favor of the defendants, and, according to these special findings and the instructions of the court, they should have had judgment for the amount claimed, of $198. Obviously, the jury found for the plaintiff upon the theory that there had been a ratification by the defendants of these credits to Clark, by the plaintiff, upon his account. The court below instructed the jury that, if they should find from the evidence that the plaintiff had entered into a contract with C. F. Clark in good faith, believing Clark to be a member of the firm of Perry Hodgden & Co., or authorized to act for the firm, and that the goods for which the defendants claimed an offset were purchased of the firm by the plaintiff in accordance with that contract, and the contract was in any way ratified by Perry Hodgden, he would be bound by such ratification. With others, the jury returned the following special questions and answers:

"Ques. Was the arrangement by which the plaintiff applied the goods purchased from Perry Hodgden & Co. to the payment of the indebtedness of C. F. Clark to him made and

entered into between C. F. Clark and Arthur Larkin? Ans. Yes.

"Q. Did Perry Hodgden and Phœbe Hodgden know of the arrangement, if any was made, between C. F. Clark and A. Larkin, and did they consent to such arrangement? A. Yes, to a certain extent."

Ratification is the controlling question in this case. The business of the defendants seemed to have been conducted by Perry Hodgden and Clark. Mrs. Hodgden was not consulted. It was agreed that two listers were to be credited on Clark's account with the plaintiff, amounting to $70. It seemed to have been conceded upon the trial that the plaintiff owed the defendants $32 for a feed cutter; that when the plaintiff purchased a Studebaker wagon of the defendants, on the 15th day of October, 1886, for $60, the defendants owed the plaintiff $44.60 for merchandise, which would leave a balance due them on the wagon of $15.40. Other items were claimed by the defendants which, with those mentioned, amounted to over $100, which the jury evidently allowed them. The plaintiff, in his bill of particulars, asked judgment for $127.10. We cannot tell, from an examination of the evidence, just how the jury arrived at the verdict in this case, but there seemed to have been some evidence to support the special findings and verdict.

Perry Hodgden knew, on the 9th of April, 1886, that C. F. Clark had an account with the plaintiff, and consented that the two listers might be credited on that account. He also knew that the plaintiff purchased goods through Clark, from the firm of Perry Hodgden & Co., after that. The plaintiff testified that, when he purchased the Studebaker wagon, Hodgden told him to credit his account with the wagon, and assigned as a reason that Clark had been credited with some goods and he wanted his account credited with this wagon, and that he did so. Perry Hodgden testified that he talked to Clark about his selling the wagon to the plaintiff, and asked him if he took a note, and he stated that he did not; that he just charged it on the book; that Larkin

said that Hodgden owed him, and that he would turn it on the account. The next morning after this conversation, he went to Larkin's store and asked about Clark's indebtedness to Larkin, and said that he then objected to Clark having credit for the wagon; and also admitted that he made inquiry as to where a road cart, which had been previously purchased, had been credited; but there was no evidence to indicate that he made any objection to its being credited to Clark. This road cart was bought in May, and the Studebaker wagon was charged to Larkin on the 14th of October; so Hodgden must have known of this transaction when he went to Larkin's store to see about the wagon. It is true that the evidence is quite conflicting in this case, but we cannot say that there is no evidence to support the findings and verdict; and we do not feel justified in setting aside the judgment after it has received the sanction and approval of the trial court.

We recommend that the judgment be affirmed.

By the Court: It is so ordered.

All the Justices concurring.